UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION (BAY CITY)

| | |
|---|---|
| In Re:<br><br>MAGDALENA PEREZ<br><br>Debtor. | Case No: 24-21078-dob<br>Chapter 7<br>Hon. Daniel S. Opperman |
| KISHORE JAYAKUMAR,<br><br>Plaintiff,<br><br>v.<br><br>MAGDALENA PEREZ,<br><br>Defendant / Third-Party Plaintiff.<br><br>v.<br><br>DAVID STOCKMAN, and<br>MICHIGAN HEALTH CLINIC,<br><br>Third-Party Defendants | Adv. Pro. No. 26-02010-dob |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THIRD-PARTY DEFENDANT DAVID STOCKMAN'S MOTION TO DISMISS**

## INTRODUCTION

Six months ago, this Court entered a default judgment against Third-Party Defendant David Stockman ("**Stockman**") after he failed to appear or otherwise defend this action. Six months later, Stockman attempts to insert himself—not by seeking to vacate the judgment against him—but by making a myriad of wrongheaded arguments that this entire adversary proceeding should be dismissed. His motion is both procedurally defective and substantively wrong. It should be denied in full.

## FACTUAL BACKGROUND

Defendant Magdalena Perez ("**Perez**") was Michigan Health Clinic, P.C.'s ("**MHC**") Chief Administrative Officer and corporate Secretary, responsible for, among other things, hiring, onboarding, payroll, and employee management. (Compl. ¶¶ 7, 10–11.) By 2023, Perez knew MHC faced solvency problems by virtue of her expansive operational control of MHC: payroll and vendor checks were repeatedly returned for insufficient funds, and Perez received the resulting complaints. (*Id.* ¶ 13.)

Despite knowledge that MHC was either unable or unwilling to pay its current obligations, Perez led the recruitment effort to bring Dr. Jayakumar to MHC. She positioned herself as a decision-maker on hiring and compensation, and touted bonus and incentive pay and benefits that Dr. Jayakumar ultimately never saw. (*Id.* ¶ 17.) She extended MHC's offer, negotiated the agreement's terms, and signed it. (*Id.* ¶ 18.) Dr. Jayakumar accepted a job with MHC in reliance on Perez's representations and began work in late November 2023. (*Id.* ¶ 19.)

Dr. Jayakumar's pay problems started immediately. He was not timely paid for his first pay period. (¶ 20.) Perez assured him that she would address the issue. (*Id.* ¶¶ 21.) On February 12, 2024, Perez mailed Dr. Jayakumar his first paycheck a month late for $10,500—not the $31,587 he had earned. (*Id.* ¶ 23.) The Complaint alleges that Perez invented that number to pacify Dr. Jayakumar and minimize MHC's exposure. (*Id.* ¶ 24.)

Perez also administered Dr. Jayakumar's benefits and, when asked in February 2024, falsely attributed his insurance coverage problems to administrative transition issues, concealing that he was uninsured for January and February 2024 while MHC deducted premiums from his pay. (*Id.* ¶¶ 26–27.)

Dr. Jayakumar continued working in reliance on Perez's assurances, was never paid again, and resigned in June 2024. (*Id.* ¶¶ 29, 31–32.) He received a final $14,806.35 check that was returned for insufficient funds. (*Id.* ¶ 33.) Dr. Jayakumar is owed $132,109.50 in unpaid wages, and under D.C. Code § 32-1308 seeks unpaid wages plus statutory damages, for a total, as of the time of the Complaint, of $528,438, plus fees and costs. (*Id.* ¶¶ 35, 43–44.)

## PROCEDURAL BACKGROUND

Dr. Jayakumar filed this adversary proceeding on March 4, 2026. (ECF No. 1.) Perez answered on April 1, 2026, and filed a Third-Party Complaint for indemnification and contribution against Stockman and Michigan Health Clinic, P.C. ("**MHC**"). (ECF No. 4.) Perez's Answer raised no Rule 12 defense nor any defense of untimeliness under Fed. R. Bankr. P. 4007(c).

On May 8, 2026, the Clerk entered a default against Stockman. (ECF No. 7.) On May 14, 2026, this Court entered a default judgment against Stockman. (ECF No. 12.) Stockman never sought to set aside the entry of default and has not sought to vacate the default judgment.

More than six months later, on October 13, 2026, Stockman filed the instant Motion to Dismiss (the "**Motion**"). (ECF No. 29.) The Motion's concurrence section still contains template instructions to "replace this paragraph with the true facts" and does not state whether concurrence was sought or denied. (Mot. at 7.) Stockman did not seek concurrence.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint need contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 9(b) requires that the circumstances of fraud be stated with particularity, but expressly provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Bankr. P. 7009. A motion for a more definite statement under Rule 12(e) is

proper only where a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

## ARGUMENT

### 1. Stockman Lacks Standing

The default judgment against Stockman precludes his participation in this case. With the default judgment in place, Stockman may only seek vacatur of the judgment. Fed. R. Bankr. P. 9024. Stockman cannot contest the factual allegations in the complaint. *See Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146 (9th Cir. 2010) ("[A] defaulted defendant loses many of the rights of a party, chief among them the right to contest the factual allegations of the complaint."). For that reason alone, the Court should deny his Motion before reaching the merits.

### 2. Stockman's Challenges are Untimely

Even if Stockman could participate in the merits, another procedural defect requires denial of the Motion: Rule 14(a)(2)(C) permits a third-party defendant only to "assert against the plaintiff any defense that the third-party plaintiff has to the plaintiff's claim." Fed. R. Civ. P. 14(a)(2)(C). The rule therefore gives Stockman no greater rights than Perez herself has.

Perez waived her defenses under Rule 12(b)(6) and Rule 12(e). That is because a Rule 12(b) motion "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b), and a Rule 12(e) motion similarly requires the "motion must be made before filing a responsive pleading." Perez answered on April 1, 2026. ECF No. 4. Her opportunity to seek pre-answer dismissal under Rule 12(b)(6), or a more definite statement under Rule 12(e) closed on that date. In short, because Perez does not have the right to file a Motion under Rule 12(b)(6) or Rule 12(e), neither does Stockman. For that reason, the Motion should be denied in full.

### 3. The Complaint Plausibly Pleads a Debt Owed Personally by Perez

To the extent the Motion has a principal theme, it is that MHC—not Perez—was Dr. Jayakumar's employer, and that a corporate officer is not personally liable on the corporation's contracts. (Mot. Ex. 3 at 6–8.) But Dr. Jayakumar adequately pleads two independent bases for Perez's personal liability, both of which the Motion itself concedes are legally available. (See Mot. at 5 ("This does not foreclose a properly pleaded statutory-employer or tort theory.").)

The Complaint alleges that Perez is an "employer" as defined in D.C. Code § 32-1301 and is therefore personally liable for Dr. Jayakumar's unpaid wages and statutory liquidated damages under § 32-1308. (Compl. ¶¶ 42–43.) The DCWPCL's definition of "employer" is not limited to the entity that signs the paycheck. Rather "employer" is defined "exceptionally broadly." *Mills v. Anadolu Agency NA, Inc.*, 105 F.4th 388, 394 (D.C. Cir. 2024). Courts evaluate the totality of the circumstances to determine who is an employer, considering for instance "whether the putative employer has the power to hire and fire, supervise and control work schedules or conditions of employment, determine rate and method of pay, and maintain employment records." *Wright v. Off. of Wage Hour*, 301 A.3d 660, 685 (D.C. 2023) (quotation and citation omitted).

The Complaint pleads facts that bring Perez comfortably within that "exceptionally broad" definition: Perez was MHC's Chief Administrative Officer and corporate Secretary; she was responsible for hiring, firing, onboarding, and payroll; she negotiated and signed Dr. Jayakumar's employment agreement; she set up his payroll and benefits; she controlled communications about his pay; and she determined and mailed his only paycheck. (Compl. ¶¶ 10–11, 18–19, 21–24, 26–28.)

Separately, it is well-settled that a corporate officer is personally liable for torts in which she personally participates, even when acting on the corporation's behalf. *See, e.g., Casias v. Wal-*

*Mart Stores, Inc.*, 695 F.3d 428, 434 (6th Cir. 2012). The Complaint alleges that Perez herself made false representations that induced Dr. Jayakumar to accept and continue employment. (Compl. ¶¶ 17, 27, 29, 34.) A debt arising from that fraud is Perez's own debt, regardless of whether MHC is also liable. Furthermore, those allegations are made with sufficient particularity: they describe who, what, and when.

**4. Count II States a Claim Under § 523(a)(6)**

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). An injury is "willful and malicious" when the debtor desires to cause the consequences of her act or believes those consequences are substantially certain to result. *See In re Markowitz*, 190 F.3d 455, 464 (6th Cir. 1999).

Dr. Jayakumar pleaded exactly that standard: Perez engaged in intentional conduct that she knew was substantially certain to harm Dr. Jayakumar, including by depriving him of earned wages and benefits. (Compl. ¶¶ 46–47.) And it pleads facts that make those allegations plausible. Perez knew MHC could not pay its employees when she induced Dr. Jayakumar to accept a job there (¶¶ 13, 17). She is alleged to have invented the amount of his only paycheck to pacify him and minimize MHC's exposure (¶ 24). Moreover, she knowingly concealed that he was uninsured while premiums were deducted from his pay (¶ 27)—conduct that does not depend on any breach of contract and that, by its nature, is substantially certain to injure the person whose wages are taken for coverage he does not receive. Because intent "may be alleged generally," Fed. R. Civ. P. 9(b), no more is required at the pleading stage.

**5. This Action is Timely**

Local Rule 1009-1 governs adding an omitted creditor after 14 days prior to the meeting creditors. It says the deadline is extended "to allow the added creditor the same number of days in which to file such a complaint or objection as the creditor would have had if the creditor had been properly scheduled when the order for relief was entered."

Perez filed on August 26, 2024, and the initial deadline to object was December 2, 2024. That means Dr. Jayakumar would have had 98 days to file a complaint if he had been properly scheduled. Perez amended her schedules on November 28, 2025, to add Dr. Jayakumar. March 6, 2026 is 98 days thereafter. Dr. Jayakumar filed his Complaint on March 4, 2026.

**6. This Case is not Duplicative**

This is a core proceeding to determine the dischargeability of a particular debt. 28 U.S.C. § 157(b)(2)(I). Unless the District Court withdraws this proceeding, *only* this Court can determine whether Perez's debt is excepted from discharge under §§ 523(a)(2) and (a)(6). Even Stockman concedes this Court's "exclusive responsibility" for that question. (Mot. Ex. 3 at 11.) Stockman's proposal to instead bifurcate the case and send liquidation of the debt to the District Court would first require the District Court to act and withdraw all or part of this proceeding. *See* 28 U.S.C. § 157(d); Fed. R. Bankr. P. 5011. The District Court has not done so, and Stockman's request to that end is procedurally improper.

Stockman's request that this Court abstain under 28 U.S.C. § 1334(c)(1) should also be denied. The Motion's reliance on *In Re Hakes* is unavailing. There, the plaintiff had filed suit against the debtor in state court *before* the debtor filed bankruptcy and complex matters of state insurance law predominated over bankruptcy issues. *See In re: Hakes*, No. 14-32139, 2016 WL 463315, at *1 (E.D. Mich. Feb. 8, 2016). Here, Dr. Jayakumar did not file suit against Perez in a

non-bankruptcy forum prior to her filing and Perez's alleged fraud under 11 U.S.C. § 523 predominates over any ancillary state law issue. Abstention is discretionary under 28 U.S.C. § 1334(c)(1), and this Court should decline to exercise it here.

**CONCLUSION**

Stockman lost his right to participate in the merits of the case when he chose to default. His only recourse now is to seek vacatur of the default judgment against him. In any event, his attack on Plaintiff's Complaint are both untimely and wrong on the merits. His motion should be denied in full.

Dated: October 27, 2026

WARNER NORCROSS + JUDD LLP

By: /s/ *Joshua C. Eggert*

Joshua C. Eggert (P87786)
Jonathan Lauderbach (P51313)
715 East Main Street, Suite 110
Midland, MI 48640
989-698-3700
jeggert@wnj.com
jlauderbach@wnj.com

*Attorneys for Kishore Jayakumar*

35050924